IN THE UNITED STATES DISTRICT COUR
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOGAN, | ) | |
|    Plaintiff, | ) | No. 2025 C 12308 |
| | ) | |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| AMERICAN ARBITRATION | ) | |
| ASSOCIATION, INC., | ) | |
|    Defendants. | ) | |

**MEMORANDUM OF AMERICAN ARBITRATION ASSOCIATION
IN SUPPORT OF MOTION TO DISMISS COMPLAINT WITH PREJUDICE**

Diane F. Klotnia (6202609)
William J. Katt (6300159)
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
(312) 363-3700
dklotnia@millershakman.com
wkatt@millershakman.com

This case is the latest of over twenty unsuccessful lawsuits Plaintiff Michael Mogan initiated as counsel or plaintiff stemming from a 2017 dispute and related arbitrations between his former client, Veronica McCluskey, her Airbnb co-hosts, and Airbnb.[1] Along the way, Mogan has been personally sanctioned in at least three cases for making frivolous arguments,[2] has sued judges who sanctioned him,[3] has sued former opposing parties for having sought sanctions,[4] has sued his opposing counsel,[5] has sued media outlets for reporting on his cases,[6] has sued the State Bar of California,[7] and, most recently, has sued the Chief Justice of the California Supreme Court.[8] In the last two months, Mogan has filed two separate lawsuits against the American Arbitration Association ("AAA") arising out of its administration of the McCluskey arbitrations. This is one of those lawsuits. (The other is pending in the Circuit Court of Cook County, with the California Chief Justice as a defendant. *See* n.8.)

In his Complaint here (Dkt. 1-1 at 8-35), Mogan asserts purported claims for disability discrimination under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12181-12189 ("Title III") (Count I) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") (Count II). Both arise out of the now-concluded arbitrations and are based on:

---

[1] By the Ninth Circuit's count, as of August 2024, "Mogan, either on his own behalf or on behalf of McCluskey, has initiated sixteen separate lawsuits all stemming from a 2017 Airbnb dispute." *Mogan v. Airbnb*, No. 23-55489, 2024 WL 3738480, at *1 (9th Cir. Aug. 9, 2024) ("*Airbnb* (9th Cir.)"). He has filed at least five more (this and four others). *Mogan v. AAA*, No. 25CH7681 (Ill. Cir. Ct.); *Mogan v. Metro. News Co.*, No. 25L5019 (Ill. Cir. Ct.), *removed as* No. 25C5739 (N.D. Ill.); *Mogan v. The Reason Found.*, No. 25L9389 (Ill Cir. Ct.), *removed as* No. 25C10508 (N.D. Ill.); *Mogan v. Ryan*, No. 25L9391 (Ill. Cir. Ct.).
[2] *McCluskey v. Henry*, 56 Cal. App. 5th 1197, 1204, 1207 (Cal. App. Ct. 2020) (affirming sanctions); *McCluskey v. Hendricks*, Nos. B318445 & B315161, 2023 WL 4195292, at *22-23 (Cal. Ct. App. June 27, 2023) (same); *Mogan v. Sacks, Ricketts & Case, LLP*, Nos. 22-15254 & 22-15793, 2023 WL 2983577, at *2-3 (9th Cir. Apr. 18, 2023) ("*Sacks Ricketts* (9th Cir.)") (same).
[3] *Mogan v. Petrou*, No. 21C6959, 2021 WL 5359400, at *3-4 (N.D. Cal. Nov. 17, 2021) (dismissing claims).
[4] *E.g.*, *Mogan v. Hendricks*, No. 23-55691, 2024 WL 4501071 (9th Cir. Oct. 16, 2024) ("*Hendricks* (9th Cir.)") (affirming dismissal).
[5] *E.g.*, *Sacks Ricketts* (9th Cir.), *supra* n.2, 2023 WL 2983577, at *2 (affirming dismissal).
[6] *E.g.*, *Mogan v. Portfolio Media, Inc.*, 143 F. 4th 790, 792 (7th Cir. 2025) (affirming dismissal).
[7] *Mogan v. State Bar of Cal.*, No. 24-3492, 2025 WL 1672874, at *1-2 (9th Cir. June 13, 2025) ("*State Bar* (9th Cir.)") (affirming dismissal).
[8] Am. Compl., *Mogan v. AAA*, No. 2025CH07681 (Sept. 25, 2025 Ill. Cir. Ct.) (adding Chief Justice).

(a) AAA mailing an arbitration order to McCluskey; (b) an arbitrator not allowing hearings or supplemental briefing on certain issues; and (c) opposing counsel threatening to have Mogan disbarred. The Complaint is what the Ninth Circuit called another of Mogan's cases: "unadorned, the-defendant-unlawfully-harmed-me accusations and naked recitations of the elements of a cause of action." *Sacks Ricketts* (9th Cir.), *supra* n.2, 2023 WL 2983577, at *2 (cleaned up).

Mogan's claims are frivolous and should be dismissed with prejudice. They are barred by: (i) arbitral immunity, a cousin of judicial immunity, that insulates arbitrators and arbitration fora, like AAA, from liability for acts related to conducting arbitrations; (ii) the statute of limitations; and (iii) issue preclusion, because Mogan has previously litigated and lost issues essential to his claims. Mogan also fails to state a claim because: (i) he pleads no facts showing he has a disability, as is required for both claims; (ii) he pleads no facts establishing any discriminatory act; (iii) his allegations foreclose monetary or injunctive relief on both claims; and (iv) he pleads no facts showing that AAA receives "federal financial assistance" necessary to bring a Section 504 claim.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2025)). The Court must "accept the well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [should] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024) (citation omitted).

2

The Court may consider "'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.'" *Mogan v. Portfolio Media Inc.*, No. 23C2868, 2024 WL 532229, at *4 (N.D. Ill. Feb. 9, 2024), *aff'd*, 143 F.4th 790 (7th Cir. 2025) (quoting *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018)). "Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts." *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016). *See also Olson v. Champaign Cty.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, [courts] may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6)."). In dismissing Mogan's claims in other cases, this court and others have taken judicial notice of court records from his other cases.[9]

The facts below are based on allegations in the Complaint and information from public court records, of which the Court may take judicial notice, some of which are also referenced in and critical to the Complaint. Paragraphs in the Complaint (Dkt. 1-1 at 8-35) are cited as "¶__."

**Background**

Mogan asserts he "has an episodic neurological disability which is a disability recognized by the American Disabilities Act of 1990, as amended" and on that basis is "an individual with a disability recognized under the ADA." ¶7. He is a lawyer. ¶1.

In 2019, Mogan filed an arbitration claim against three Airbnb employees on behalf of his client, Veronica McCluskey ("First Arbitration"). ¶14. Before the final hearing, Mogan's opposing counsel "attempted to call" him as a witness. *Id.* The arbitrator "requested more information from Mogan regarding a potential ethical conflict" and "Mogan voluntarily withdrew" as counsel. *McCluskey v. Henry*, No. 21C7014, 2021 WL 11653039, at *5 (C.D. Cal. Oct. 21, 2021). *See also*

---

[9] *Portfolio Media*, 2024 WL 532229, at *4; *Hendricks* (9th Cir.), *supra* n.4, 2024 WL 4501071, at *2; *Airbnb* (9th Cir.), *supra* n.1, 2024 WL 3738480, at *3; *Mogan v. Sacks, Ricketts & Case LLP*, No. 21C8431, 2022 WL 94927, at *1-2 (N.D. Cal. Jan. 10, 2022) ("*Sacks Ricketts* (N.D. Cal.)").

*id.* at *1-2. After he withdrew, AAA sent a letter to McCluskey telling her that Mogan had withdrawn and the arbitrator had granted a sixty-day stay, and asking if she intended to pursue the arbitration and to retain new counsel. *See* Ex. 1, Mogan Decl. & Ex. 33 thereto, *McCluskey v. Henry*, No. 21C7014, Dkt 17-5 at 5, 35-37 (C.D. Cal. Sept. 16, 2021)) (authenticating and attaching AAA letter). The letter was not sent to Mogan, ¶15, or "posted" on AAA's website under Mogan's "active cases." ¶16. In Mogan's other experience, AAA "always . . . served [him] by e-mail of orders issued by the arbitrator." ¶15. The First Arbitration was dismissed without prejudice. ¶17.

Mogan refiled the arbitration in 2021 ("Second Arbitration"). ¶28. At a scheduling conference, Mogan's opposing counsel "threatened to get [Mogan] disbarred." ¶30. The arbitrator did not address the comment or allow Mogan to respond. ¶30. Mogan "submitted a written disability harassment complaint" to AAA about counsel's "misconduct at the initial hearing and the arbitrator's lack of any response." ¶34. Mogan requested a "reasonable accommodation" in the form of "a hearing" "before any final decision was made by the arbitrator." ¶¶34, 36-37.

On December 5, 2022, Mogan made a written request to the arbitrator for a hearing as a "reasonable accommodation." ¶38; Ex. 2, Mogan Decl. & Ex. 20 thereto, *McCluskey v. Henry*, No. CGC-18-567741 (Cal. Super. Ct. Mar. 6, 2023) (authenticating and attaching Mogan letter). Opposing counsel objected in writing the next day. ¶40; Ex. 3, Mogan Decl. & Ex. 21 thereto, *McCluskey v. Henry*, No. CGC-18-567741 (Cal. Super. Ct. Mar. 6, 2023) (authenticating and attaching objection). Mogan responded to the objection. ¶40.

On December 20, 2022, the arbitrator issued a final award in the Second Arbitration without a hearing. ¶45; Ex. 4, J. Confirming Arbitration Award, at Ex. A (Final Award) at 3, *McCluskey v. Henry*, No. CGC-18-567741 (Cal Super. Ct. Apr. 28, 2023). Mogan "had never been involved in an AAA arbitration proceeding . . . where he had not been afforded a hearing." ¶39.

4

The Final Award addressed Mogan's request for "an ADA accommodation in the form of a hearing" and his complaint of harassment at the scheduling conference. Ex. 4, *supra*, at Final Award at 2-3. The arbitrator was not aware that Mogan "suffered from any disability," observed "no 'egregious' conduct or harassment" at the conference, and noted that opposing counsel denied knowing of "Mogan's disability, denied any harassment, and explained that her arguments about [Mogan making] frivolous and baseless claims were based upon actual court and arbitrator written comments." *Id*. The arbitrator found such arguments "were within the bounds of proper argument and supported." *Id*. at 3. The award held that "no further briefing or hearing will be permitted." *Id*.

On December 21, 2022, Mogan filed a motion for clarification of the Final Award, ¶45, and later requested a hearing and additional briefing as a "reasonable accommodation." ¶45. AAA did not respond to his request. ¶45. On January 30, 2023, AAA sent Mogan the arbitrator's order of the same date denying his motion. Ex. 5, Mogan Decl. & Ex. 13 thereto, *McCluskey v. Henry*, No. CGC-18-567741 (Cal. Super. Ct. Mar. 6, 2023) (authenticating and attaching letter and order).

The arbitration respondents then sought to confirm the Final Award, and Mogan (on behalf of McCluskey) sought to vacate it. *See* Ex. 6, Opp'n to Pet. to Confirm Award, *McCluskey v. Henry*, No. CGC-18-567741 (Cal. Super. Ct. Mar. 6, 2023). Mogan argued, among other things, that the arbitrator made "inappropriate comments towards" Mogan, *id.* at 8, "refus[ed] to hold a single hearing," *id.*, denied his "request for reasonable accommodations under the ADA" "in her final award," *id.* at 1-2, and "did not even acknowledge" the "inappropriate conduct" of Mogan's opposing counsel of "harassing" him and opposing his "ADA request," *id.* at 10. On April 28, 2023, a California court entered judgment confirming the Final Award. *See* Ex. 4, *supra*.

5

**Argument**

I. **Arbitral Immunity Bars Mogan's Claims.**

Courts "uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration." *Pfannenstiel v. Merrill Lynch, Pierce Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007) (citing decisions of the First, Second, Third, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits). This "absolute immunity extends to all acts taken by arbitrators within the scope of their adjudicative duties, even those alleged to be malicious, irregular, or erroneous." *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 902 (N.D. Ill. 2016), *aff'd*, 700 F. Appx. 535 (7th Cir. 2017). Immunity applies to both arbitrators and organizations that sponsor arbitrations, like AAA. *Int'l Med. Grp., Inc. v. AAA*, 312 F.3d 833, 844 (7th Cir. 2002) (affirming dismissal of AAA based on arbitral immunity); *London v. FINRA, Inc.*, No. 21C6434, 2023 WL 6388206, at *4 (N.D. Ill. Sept. 29, 2023) ("[C]ourts have agreed that immunity applies to arbitrators, arbitration fora, and sponsoring organizations because arbitrators perform a quasi-judicial function").

Courts here and throughout the country routinely hold that arbitral immunity bars claims against AAA. *See, e.g.*, *Int'l Med. Grp.*, 312 F.3d at 844 (affirming dismissal of AAA); *Acuna v. AAA*, 180 Fed. Appx. 699 (9th Cir. 2006) (same); *Hutchins v. AAA*, 108 Fed. Appx. 647 (1st Cir. 2004) (same); *Hudson v. AAA*, 101 Fed. Appx. 947 (5th Cir. 2004) (same); *Jason v. AAA*, 62 Fed. Appx. 557 (5th Cir. 2003) (same); *Gilman Landco, LLC v. AAA*, No. 15C2295, 2016 WL 1019265, at *3 (C.D. Ill. Mar. 2, 2016) ("[AAA] is clearly entitled to arbitral immunity.").

Arbitral immunity has been specifically applied to bar claims of alleged disability discrimination during the administration of arbitration. *Aku v. Chi. Bd. Educ.*, 290 F. Supp. 3d 852, 865 (N.D. Ill. 2017) (arbitral immunity barred ADA claims against arbitrator). *See also Hudnall v.*

6

*Texas*, No. 22C36, 2022 WL 4077334 (W.D. Tex. Aug. 30, 2022), *adopting* 2022 WL 3219423, at *10 (W.D. Tex. Aug. 9, 2022) (arbitral immunity barred ADA claim against AAA); *McCarty v. Derivium Capital, LLC*, No. 03C651, 2005 WL 3320564, at *1-2 (D. Conn. Nov. 21, 2005) (same); *Johnson v. AAA*, No. 98C6314, 1999 WL 223154, at *2 (S.D.N.Y. Apr. 16, 1999) (same).

Mogan's claims are plainly barred because they are explicitly based on AAA's administration of arbitrations. *See* ¶67 (alleging AAA "administer[ed] arbitration services in such a way as to discriminate against" him). Each alleged discriminatory act is clearly related to the conduct of the arbitrations: (1) AAA transmitting an order, *e.g.*, ¶¶14-15, (2) Mogan requesting hearings and briefing, *e.g.*, ¶¶34, 38, 45, 73, and (3) opposing counsel's statements before the arbitrator, *e.g.*, ¶¶30, 40, 44, 66. Accordingly, Mogan's claims are barred by arbitral immunity under the caselaw above and should be dismissed with prejudice.

## II. The Statute of Limitations Bars Mogan's Claims.

The statute of limitations also bars Mogan's claims. "Illinois' two-year statute of limitations for personal injury suits applies to suits under the ADA and Rehabilitation Act." *Porch v. Univ. of Ill. at Chi. Sch. of Med.*, No. 23-2529, 2024 WL 2287194, at *3 (7th Cir. May 21, 2024) (citing *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550-51 (7th Cir. 1996) (ADA) and *Rutledge v. Ill. Dep't of Hum. Servs.*, 785 F.3d 258, 260 (7th Cir. 2015) (Rehabilitation Act)). "The statute of limitations for these claims begins to run when the injured party discovers the discriminatory act." *Id.* (citing *Soignier*, 92 F.3d at 551–52).

AAA's last allegedly discriminatory act was not addressing Mogan's request for a hearing and supplemental briefing in his post-award motion for clarification. ¶45. That act occurred, and Mogan knew of it, no later than January 30, 2023, when AAA sent Mogan the arbitrator's order denying his motion. Ex. 5, *supra*. Indeed, Mogan publicly disclosed in his personal bankruptcy

7

proceedings on August 2, 2023, that he "will be fil[ing]" "ADA claims" against AAA. Ex. 7, Plan of Reorg., at 4-5, *In re Mogan*, No. 22B1957, Dkt. 104 (N.D. Ill. Bankr. Aug. 2, 2023). Yet Mogan waited until September 4, 2025, more than two years later, to file this case. Accordingly, Mogan's claims are time-barred and, for this additional reason, should be dismissed with prejudice.

**III. Issue Preclusion Bars Mogan's Claims.**

Mogan previously litigated, and lost, two core issues: whether he had a right to hearings in the Second Arbitration as an "accommodation" and whether opposing counsel harassed him based on a disability. *E.g.*, ¶¶34-35, 38, 73. Issue preclusion applies to each and therefore bars his claims.

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748-749 (2001)). "[T]he preclusion law of the state where the judgment was rendered" applies to state-court judgments. *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013) (citing 28 U.S.C. §1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982)). "Under California law, issue preclusion applies '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" *Sacks Ricketts* (9th Cir.), *supra* n.2, 2023 WL 2983577, at *1 (quoting *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 825 (Cal. 2015)).

All elements are met. The issues are identical: Mogan asserts here that he was entitled to the very same accommodation he requested and was denied in the Second Arbitration—a hearing based on alleged harassment by his opposing counsel. That issue was actually litigated in the Second Arbitration: Mogan presented the issue to the arbitrator (¶38; Ex. 2, *supra*), the opposing side submitted a written response (¶40; Ex. 3, *supra*), and Mogan a further response (¶40). The

8

issue was then finally adjudicated: The arbitrator addressed and decided the issue in the Final Award, Ex. 4, *supra*, at Final Award at 2-3, and a court later confirmed that award over Mogan's objections, in which he specifically raised the alleged disability harassment and the failure to provide his requested accommodation. Ex. 6, *supra*, at 1-2, 7-8, 10, 12; Ex. 4, *supra*.

Finally, Mogan was in privity with McCluskey (a party to the prior judgment) at least on the relevant issues of whether *Mogan's* disability justified a hearing as an accommodation or was the basis of harassment. Privity "requir[es] the sharing of an identity or community of interest, with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit." *Grande v. Eisenhower Md. Ctr.*, 13 Cal. 5th 313, 326 (Cal. 2022) (quotation omitted). Mogan and McCluskey both were interested in obtaining a hearing and remedying any harassment (McCluskey in furtherance of her case, and Mogan in furtherance of his purported rights); Mogan cannot dispute adequate representation since he made the arguments himself; and because the disability issues—accommodation and harassment—affected Mogan personally, he should have reasonably expected to be personally bound by those rulings. *See, e.g.*, *Sacks Ricketts* (N.D. Cal.), *supra* n.9, 2022 WL 94927, at *9 (holding that under California law Mogan was in privity with McCluskey regarding issues that led to sanctions against Mogan in *McCluskey v. Henry*, the same case in which the Final Award was confirmed, thus barring him from relitigating those issues in later litigation).

Because Mogan is precluded from relitigating the core of his claims—accommodations and harassment—he cannot establish his claims here, and they should be dismissed with prejudice.

**IV.     The Complaint Fails to State a Cause of Action.**

The Complaint also fails to state a claim under either Title III or Section 504 for several reasons: (a) Mogan pleads no facts establishing that he has a qualifying disability, or (b) that any

9

disability discrimination occurred; (c) his allegations confirm he is not entitled to damages or injunctive relief under Title III or Section 504; and (d) he has not and cannot plead facts establishing that AAA receives "federal financial assistance" required under Section 504.

### A. Mogan Pleads No Facts Showing He Has a Disability.

Fundamental to Mogan's claims are allegations establishing that he has a "disability" under Title III and Section 504. *E.g.*, *Ellison v. U.S. Postal Serv.*, 84 F.4th 750, 756 (7th Cir. 2023) (Section 504); *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037 (7th Cir. 2021) (Title III). For both, "[a] disability is '(i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) a record of such an impairment; or (iii) being regarded as having such an impairment.'" *Mohammed v. DuPage Legal Assist. Found.*, 781 Fed. Appx. 551, 552 (7th Cir. 2019) (quoting 28 C.F.R. §36.105(a)(1)).

Another federal court has already considered and found the *exact* allegations Mogan makes here to be insufficient to state a claim under the ADA and Section 504. Mogan alleges he "has an episodic neurological disability which is a disability recognized by the American with Disabilities Act of 1990, as amended," and "is an individual with a disability as recognized under the ADA." ¶7. The Central District of California, quoting identical allegations made in *Mogan v. State Bar of California*, held that: (i) "it is not clear" what Mogan's "disability is," (ii) the allegations are "ultimately legal conclusions," and (iii) Mogan failed to state a claim under the ADA or Section 504. No. 23C930, 2024 WL 4406943, at *6-7 (C.D. Cal. May 7, 2024). The Ninth Circuit affirmed. *State Bar* (9th Cir.), *supra* n.7, 2025 WL 1672874. Those same allegations, repeated here, remain deficient. *See Orr*, 147 F.4th at 741 ("recitals of the elements" and "conclusory statements" are insufficient). *See also Mohammed*, 781 Fed. Appx. at 552-53 (holding allegation of "emotional disabilities" was insufficient without identifying what they were, how they "substantially limited

10

a major life activity, that he has a record of any disability, or that [the defendant] regarded him as disabled"). For this additional reason, Mogan's claims should be dismissed.

B.  **Mogan Pleads No Facts Showing Discrimination Based on Disability.**

Critical to both of Mogan's claims are allegations of discrimination based on disability. To plead a Title III claim, Mogan must allege facts establishing he was "discriminated against . . . in the full and equal enjoyment of" AAA's services "on the basis of disability." *Castelino*, 999 F.3d at 1037. For Section 504, he must show he was "excluded . . . from or denied . . . the benefit of" AAA's services "because of" his disability. *Ellison*, 84 F.4th at 756. Denial of a reasonable accommodation is one theory of discrimination, and to plead it, the plaintiff must establish, among other things, that the denied accommodation was "necessary" to receive the benefit of defendant's services. *Castelino*, 999 F.3d at 1037. Again, Mogan's allegations fail.

*Mailed Order*. Mogan does not allege AAA mailed the arbitrator order to his client (and not him) in the First Arbitration *because* of his supposed disability. Rather, his theory is that AAA's technology is inherently inaccessible. ¶26. But he pleads no supporting facts. To the contrary, he alleges that, with the one exception, he received every other order electronically, confirming that he consistently was able to access AAA's services. ¶15. His allegations therefore cannot establish discrimination based on disability. (Moreover, public court records confirm what Mogan omits: AAA mailed the order to McCluskey (and not Mogan) because he had withdrawn as her counsel, not due to any disability. *See* Ex. 1, *supra*; *McCluskey*, 2021 WL 11653039, at *5.)

*Denial of Accommodations*. Mogan pleads no facts establishing that the live hearings and additional briefing he requested were "necessary" for him to enjoy AAA's services in light of his disability. To the contrary, Mogan touts surviving summary judgment in the First Arbitration (¶14) and acknowledges he was able to file a dispositive motion, exhibits, and a supplemental brief in

the Second Arbitration (¶¶31-33). He may have preferred more opportunities to make his case, but no pleaded facts suggest his requested accommodations were "necessary," and thus his claim fails.

The Ninth Circuit addressed virtually the same issue in *Airbnb* (9th Cir.), *supra* n.1, 2024 WL 3738480, at *4, where Mogan had argued that the district court erred in dismissing his claims without oral argument because, he asserted, "he was entitled to oral argument as a 'reasonable accommodation'" due to his "'communication disabilities' and 'health issues.'" *Id*. The court disagreed, finding no "authority suggesting that Mogan's alleged disabilities and health issues entitle him to oral argument." *Id*. Although that ruling concerned oral argument in a federal trial court, as opposed to an arbitration, *e.g.*, ¶¶34-35, 38, the result should be the same. With no facts showing this accommodation was necessary, Mogan has not pleaded a claim.

Mogan's reasonable-accommodation theory fails for another reason: AAA had no authority to grant him hearings or supplemental briefing, and Mogan alleges no facts to suggest otherwise. Those decisions were for the arbitrator, not AAA. As a matter of law, AAA cannot be liable for "denying" an accommodation it had no ability to provide. *Porch v. Univ. of Ill. at Chicago, Sch. of Med.*, No. 21C3848, 2022 WL3082353, at *5-6 (N.D. Ill. Aug. 3, 2022) (holding university could not be liable under Title III or Section 504 for alleged failure to provide testing accommodation when a third-party test administrator, not the school, had to authorize the accommodation).

*Harassment by Opposing Counsel*. Mogan's harassment-based claim fails, too, because he alleges no facts establishing that his opposing counsel's harassment was based on his disability. His opposing counsel allegedly threatened to have Mogan disbarred. ¶30. While those comments may have been uncivil, Mogan does not allege they were made *because* of his disability. His opposing counsel later opposed Mogan's request for a live hearing, identifying perceived weaknesses in his request. ¶40. But again, Mogan alleges no facts to suggest that his opponent did

12

so *because* he was disabled. (And, indeed, the arbitrator later found in the Final Award that she witnessed no harassment (based on disability or otherwise) at any point in the arbitration, and that opposing counsel's comments were based on other courts and arbitrators having previously described Mogan's claims as "frivolous." Ex. 4, *supra*, at Final Award at 2-3.) Without facts linking this alleged harassment to his purported disability, Mogan has not stated a claim.

### C. Mogan Is Not Entitled to the Relief He Seeks.

Mogan pleads no facts to support the limited relief available under Title III or Section 504.

#### 1. Mogan Pleads No Facts Showing a Right to Damages.

Mogan's claims to recover damages under Counts I and II fail because damages are unavailable under Title III and his pleaded injury cannot support damages under Section 504.

First, "[d]amages are not recoverable by private parties under Title III of the ADA." *Walsh v. Dania Inc.*, 716 F. Supp. 3d 655, 661–62 (N.D. Ill. 2024) (citing *Ruffin v. Rockford Mem'l Hosp.*, 181 Fed. Appx. 582, 585 (7th Cir. 2006)).) Contrary to Mogan's assertion (¶4), 42 U.S.C. §12188(b)(2) changes nothing. That paragraph permits damages in actions *brought by the Attorney General*—not private parties like Mogan. Thus, Mogan cannot state a Title III claim for damages.

Second, in Count II, Mogan seeks to recover damages for "emotional distress, anxiety, frustration, and embarrassment." ¶69. But the Supreme Court has held that "emotional distress damages are not recoverable" under Section 504. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217, 230 (2022) (affirming dismissal of Section 504 claim based on "humiliation, frustration, and emotional distress"). Thus, Mogan has not stated a Section 504 claim for damages.

#### 2. Mogan Lacks Standing to Seek Injunctive Relief.

Mogan also seeks injunctive relief under Counts I and II. "[W]hen a federal court addresses a claim for injunctive relief, it must take care to determine whether plaintiffs have offered evidence

of a 'real and immediate'—and not just a 'conjectural or hypothetical'—threat of a future violation of their rights." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). *See also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (applying standard to 12(b)(6) motion).

Mogan's allegations confirm the *absence* of any real and immediate threat of future harm. As his allegations make clear, AAA mailing the order and the arbitrator not holding hearings were unique and not likely to be repeated. AAA "had always" sent orders to Mogan "by e-mail" before it mailed one order to his client in the First Arbitration. ¶15. Mogan thereafter refiled the Second Arbitration, ¶28, in which he alleges no problems receiving orders. And, other than the Second Arbitration, Mogan "had never been involved in an AAA arbitration proceeding . . . where he had not been afforded a hearing." ¶39. Thus, even assuming AAA's alleged acts constituted discrimination (they did not), Mogan admits they were atypical in his own experience, and, thus, they do not support a "real and immediate" threat required to plead standing for injunctive relief.

Mogan's allegation that his opposing counsel harassed him is also insufficient for injunctive relief. He does not allege facts showing he has experienced threats of disbarment (or other "disability" harassment) in other arbitrations. His claim, rather, depends on speculation that some unknown opposing counsel in an unknown future arbitration will harass him based on a disability and, assuming that happens, AAA has a duty to address it and will not address it. That is, at most, a "'conjectural or hypothetical,'" and not a "'real and immediate,'" threat of future harm. *Hummel*, 817 F.3d at 1016 (quoting *Lyons*, 461 U.S. at 102).

In *Hummel*, the plaintiffs lacked standing to sue for injunctive relief under Title III and Section 504 where the alleged future harm—inadequate courthouse access when it snowed—required the court to "speculate whether [plaintiffs'] cases will involve court appearances on future

14

snowy days." *Id.* at 1019. Mogan's claims similarly require speculation about future harassment by third parties in arbitrations. Like the plaintiffs in *Hummel*, he lacks standing for injunctive relief.

        **D.**      **Mogan Has Not and Cannot Allege "Federal Financial Assistance" to AAA.**

Count II should be dismissed for an additional reason: Section 504 applies to private parties only if they receive "Federal financial assistance." 29 U.S.C. § 794(a). *See also Cerda v. Chi. Cubs Baseball Club, LLC*, 405 F. Supp. 3d 780, 793-794 (N.D. Ill. 2019) (dismissing claim for failure to plead receipt of federal financial assistance). "'Courts interpreting [Section 504] have consistently construed 'Federal financial assistance' to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided.'" *Abdus-Sabur v. Hope Vill., Inc.*, 221 F. Supp. 3d 3, 9 (D.D.C. 2016) (quoting *Lee v. Corr. Corp. of Am./Corr. Treatment Facility*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014)) (holding that federal payments for prison services are not "federal financial assistance" for purposes of Section 504). *See also, e.g.*, *Wilson v. Integrated Med. Sys., Inc.*, No. 14C5726, 2016 WL 4734362, at *4 (N.D. Ill. Sept. 12, 2016) ("[Courts] equate federal financial assistance to a subsidy—that is, payments or transfers for less than fair market value.").

Mogan alleges that AAA receives "federal funds . . . from services performed by" AAA. ¶¶48, 82. Because payment for services is not "federal financial assistance" for Section 504, *Abdus-Sabur*, 221 F. Supp. 3d at 9; *Wilson*, 2016 WL 4734362, at *4, Count II should be dismissed.

## CONCLUSION

AAA respectfully requests that this Court enter an Order dismissing the Complaint with prejudice and grant such further relief as the Court deems just and proper.

Dated: October 15, 2025              Respectfully submitted,
                                                 **AMERICAN ARBITRATION ASSOCIATION, INC.**
                                                 */s/ William J. Katt*
                                                 One of its attorneys