## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOGAN, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 25-cv-12308 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| AMERICAN ARBITRATION | ) | |
| ASSOCIATION, INC. | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Mogan is an attorney who brought and litigated two arbitration proceedings on behalf of his clients. (Dkt. 1-1, ¶¶ 14-46). In light of the results and conduct arising from those proceedings, Mogan sued the American Arbitration Association, Inc. for disability discrimination under Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12181-89) ("Title III") and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) ("Section 504") (Dkt. 1-1, ¶¶ 51-83). The AAA moved to dismiss with prejudice. (Dkt. 8). For the reasons below, the Court grants AAA's motion to dismiss, but not with prejudice. Mogan is granted leave to amend, subject to the Court's admonishment that any filing not in strict compliance with Rule 11 will subject him to sanctions.

## BACKGROUND

Mogan claims to have "an episodic neurological disability," "mixed insomnia," "trouble falling and/or staying asleep," "panic attacks, sleeplessness, anxiety, intermittent seizures, and tinnitus symptoms." (Dkt. 1-1, ¶¶ 7, 8, 34). This "disability substantially limits" his "major life activities," like "sleeping, communicating, concentrating and interacting with others." (*Id.*, ¶ 8).

Yet, Mogan's claims arise from no disability; but rather from complaints about opposing counsel, an arbitrator, and the AAA's docketing system during arbitration proceedings dating back to 2019. (*Id.*, ¶¶ 14-46). Mogan brings claims regarding docketing issues, conduct during the arbitration proceedings, and the AAA's response to his allegations.

<u>Docketing Issues</u>

Mogan alleges that the AAA violated Title III and Section 504 because the arbitrator—not the AAA—sent an order to Mogan's client "through the mail" instead of to Mogan through email. (*Id.*, ¶ 15). Mogan contends that this order was not "posted on" the AAA's website under Mogan's "active cases" and because of this, he could not use the AAA's "services because their business lacked an accessible website." (*Id.*, ¶ 16). Mogan also takes issue with the AAA's docket system because there is no electronic noticing and filing system to serve parties with orders, filings, or correspondence. (*Id.*, ¶ 21(a)-(c)). Continuing with technological issues, Mogan states that he could not submit a motion in a single email because the attachments were too large. (*Id.*, ¶ 31). This caused him to send "over twenty five emails" instead. (*Id.*) Mogan alleges that these technical docketing problems violate Title III and Section 504 because, "as an individual with a disability," they prevented him from accessing the AAA's services. (*Id.*, ¶¶ 21-27). To Mogan, these "communication barriers" create an "unequal" access to the AAA's services. (*Id.*, ¶ 19).

<u>Conduct During The Arbitration Proceedings</u>

Mogan takes issue with the conduct of an attorney and the arbitrator (again not the AAA) during the arbitration proceedings. (*Id.*, ¶¶ 28-46). Mogan claims that opposing counsel "threatened" to get him "disbarred" and the arbitrator took no action "about such misconduct." (*Id.*, ¶ 30). He states that he received a "disturbing letter" from opposing counsel (*id.*, ¶ 40) and the arbitrator made "negative statements" to him as she was not "aware" that he "suffered any

disability during the initial hearing." (*Id.*, ¶ 44). Mogan also alleges that the arbitrator refused to "conduct a live hybrid evidentiary hearing," despite being necessary for Mogan to "effectively represent his client." (*Id.*, ¶ 29).

<u>Defendant's Response</u>

Stemming from these events, Mogan sent "a written disability harassment complaint" and a "request for reasonable accommodation under the ADA" to the AAA requesting the AAA to "investigate" these issues and provide Mogan with a hearing. (*Id.*, ¶ 34). In this correspondence, Mogan informed the AAA that "he experienced panic attacks, sleeplessness, anxiety, intermittent seizures, and Tinnitus symptoms." (*Id.*, ¶ 35). He requested an "interactive process" for "alternative effective accommodations." (*Id.*) He alleges he repeatedly submitted these requests, but the AAA did not resolve the issues or engage in an "interactive process." (*Id.*, ¶¶ 35-46).

## **<u>LEGAL STANDARD</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## DISCUSSION

### I.    Arbitral Immunity

Mogan sued the American Arbitration Association for violations of Title III and Section 504, but his complaint is deficient. *Id.* The Court need not address every issue because Mogan's claim is barred at the outset by arbitral immunity. The doctrine of arbitral immunity is well-established in this Circuit. *Int's Med. Group, Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 843 (7th Cir. 2002); *Galuska v. New York Stock Exch.*, 210 F.3d 374 (7th Cir. 2000); *Caudle v. Am. Arb. Ass'n*, 230 F.3d 920 (7th Cir. 2000); *Tamari v. Conrad*, 552 F.2d 778, 781 (7th Cir. 1977). Arbitral immunity serves important functions. If arbitrators could "be caught up in the dispute and . . . saddled with the burdens of defending a lawsuit" they would "be dissuaded from serving." *Int'l Med. Grp.*, 312 F.3d at 843. Indeed, suing an arbitrator is "comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit." *Id.*; *New England Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("arbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants").

These protections extend to sponsoring organizations—like the American Arbitration Association—and they are broad. *Id.* Sponsorship associations perform quasi-judicial functions, so the law treats them like courts and extends the same immunity from civil liability. *Id.*; *see also Butz v. Economou*, 438 U.S. 478, 512 (1978) ("Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."). Because of this, "sponsoring organization's immunity extends to all administrative tasks it performs." *Id.* (citing *New England Cleaning*, 199 F.3d at 545). This broad immunity covers "civil liability arising from actions taken in the course of conducting arbitration

4

proceedings." *Id.* (citing *Hawkins v. Nat. Ass'n of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998)). The exceptions, if any, are narrow if not hypothetical—such as if the organization acts so far outside its administrative tasks (like stealing money from the participants) that it loses jurisdiction over the proceedings. *See, e.g.*, *Caudle*, 230 F.3d at 922 (hypothetical example of a sponsorship organization "pocket[ing] the money without arbitrating the dispute" deprives the organization of immunity).

That is not the case here. Mogan pleaded no facts showing why the AAA is not immune. (*Supra* at 1-3). Mogan pleaded no facts showing that the AAA acted outside its administrative duties. (*Id.*) Mogan's allegations are often inapplicable to the AAA and instead fixate on non-parties. (*Id.*); (*see, e.g.*, Dkt. 1-1, ¶¶ 14, 15, 17, 28-33, 44); (*id.*, ¶ 30) (alleging that non-party "Damali Taylor threatened to get Plaintiff disbarred" and the non-party "arbitrator said nothing about such misconduct when this happened allowing Damali Taylor to continue to harass Plaintiff with multiple personal attacks"). Mogan's allegations that reference the AAA show conduct within its day-to-day administrative duties as an arbitration service provider. (*Id.*) Mogan's suit is barred by arbitral immunity. *Int'l Med. Grp.*, 312 F.3d at 843.

Mogan begins by alleging that when the arbitrator sent an order to Mogan's client "through the mail" instead of to Mogan through email that this violated Title III and Section 504. (Dkt. 1-1, ¶ 15). Mogan did not sue the arbitrator—he sued the AAA. (*Id.* at 1). Mogan failed to allege sufficient facts showing that the Court should treat the non-party arbitrator's actions as interchangeable with those of the AAA. *See Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 584 (6th Cir. 2021) ("Under AAA's rules, an arbitrator and an [AAA] administrator are distinct."); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1363 (11th Cir. 2023) (the AAA's Consumer Arbitration Rules "prescribe distinct roles for the administrator and arbitrator"). Mogan has also

failed to allege sufficient facts that the Court has jurisdiction over the non-party arbitrator or non-party attorney. Fed. R. Civ. P. 12(b)(1); *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) ("Article III's Case or Controversy requirement . . . limits federal courts to resolving concrete disputes between adverse parties"). Even if Mogan's allegations can be construed as sufficient that the Court should equate the arbitrator's conduct with those of the AAA, they are still insufficient because issuing an order is an administrative function of an arbitration proceeding and is subject to immunity. *Int's Med. Group*, 312 F.3d at 843. Mogan fails to allege or explain how the manner in which the order is sent, whether by mail, email, or posting online, changes the purpose of the conduct to facilitate arbitration services.

Mogan alleges that AAA's docketing procedures and website functions violate Title III and Section 504 because they are "communication barriers" that create "unequal" access to the AAA's services. (Dkt. 1-1, ¶ 19). Mogan identifies functions—such as orders not being "posted on" AAA's website under Mogan's "active cases" and file-size limitations on email attachments— as the specific causes for the Title III and Section 504 violations. (*See, e.g.*, ¶¶ 16, 31). Mogan does not specify who would be posting orders on the AAA website (whether the arbitrator or the AAA); it is also unclear whether the attachment size limitation issue is a function of AAA's services or Mogan's email provider. Taking inferences in Mogan's favor, these allegations are still not sufficient. They are the way the AAA provides its website and services—basic administrative tasks subject to immunity. *Int's Med. Group*, 312 F.3d at 843. The manner in which the AAA (or the arbitrator) posts orders is an administrative decision and task. Assuming determining email size capacity is an AAA decision (and not a byproduct of Mogan's email provider), this too is an administrative decision in furtherance of the AAA's services. While Mogan may find these functions inconvenient, that does not strip the AAA of immunity. *Id.* To the extent that Mogan

claims that the website and the manner in which orders are posted somehow discriminated against him based on a disability, he fails to show how "panic attacks, sleeplessness, anxiety, intermittent seizures, and Tinnitus" are impacted by the website. In fact, he fails to show that the website is not accessible to him; instead, he finds that the administrative functions are simply frustrating or inconvenient. This, again, fails to strip the AAA of immunity. What is critically missing from Mogan's complaint is any discriminatory conduct that the AAA committed because of Mogan's alleged disability. *Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014) ("one essential allegation" to properly allege discrimination is to show "that someone else has been treated differently"). Instead, what remains clear is that Mogan was treated the same as any other attorney using the AAA's services. Mogan never connects the way the AAA organizes its website, permits users to access it, and the utility of its applications, to any specific discriminatory conduct that the AAA committed on the basis of Mogan's alleged disability.

While Mogan alleges that he was denied equal access to the AAA's services because of his disability, he shows no disparities between his access and that of anyone else. (Dkt. 1-1, ¶¶ 7-46). He offered the Court no indication that the way he accesses his "active cases" is different from any other individual. (*Id.*) Rather, it appears that anyone who uses the AAA's services have *equal* access to what it offers—such as, for example, no orders posted under their "active cases" account. While Mogan may find this inconvenient or a poor service offering, that does not make it discriminatory. By contrast, Mogan's allegations show that he enjoyed *full* access to the AAA's services: he filed and litigated two proceedings before the AAA. (*Id.*) He agreed on the arbitrator and their conditions and procedures. (Dkt. 8-1, at 32, n. 1). He had access to the AAA website and his personal account. (Dkt. 1-1, ¶¶ 16, 18). He asserted his positions about how the proceedings *should* be held. (*Id.*, ¶¶ 34-45). He challenged the arbitrator's rulings and award. (Dkt. 8-1, Exs. 3,

5-6). Mogan does not show how being able to enjoy the full array of the AAA's offerings is unequal or discriminatory. *Wigginton*, 770 F.3d at 523 (affirming dismissal of the complaint under the Americans with Disabilities Act and the Rehabilitation Act because "the complaint does not allege that plaintiffs have been treated worse than other applicants").

Another core allegation Mogan raises is that the conduct of an attorney and the arbitrator during the arbitration proceedings violated Title III and Section 504. (Dkt. 1-1, ¶¶ 28-46). Mogan identifies instances where opposing counsel sent him a "disturbing letter" and "threatened" to get him "disbarred," while the arbitrator took no action. (*Id.*, ¶¶ 30, 40). As explained above, however, the conduct of the attorney is not relevant because Mogan did not sue the attorney. *Supra* at 5-6. For that same reason, the conduct (or lack of action) by the arbitrator is similarly irrelevant because Mogan did not sue her. *Id*. Even if the arbitrator's actions could be imputed to the AAA, they also fall under arbitral immunity. *Int's Med. Group*, 312 F.3d at 843. Resolving disputes that arise during proceedings is a core function of an arbitrator; while Mogan may not agree with the arbitrator's decision, that does not cause the AAA to lose immunity. *Id.* For this reason too, the arbitrator's preference on how to conduct an evidentiary hearing falls within her discretion. *Id.*; (Dkt. 1-1, ¶¶ 29, 44). Construing these allegations to implicate the AAA—i.e., the AAA chose to deny Mogan an evidentiary hearing—still fail as these are administrative decisions in furtherance of arbitration services subject to immunity. *Int's Med. Group*, 312 F.3d at 843-44 (explaining broad scope of AAA immunity).

The attorney and the arbitrator also deny these allegations. (Dkt. 8-1 at 26-27). The attorney denies any threatening conduct and instead explained that she merely identified Mogan's lengthy history of filing frivolous lawsuits and getting sanctioned for it. (*Id.* at 26) ("As I explained . . . Mr. Mogan has . . . pursued unrelenting, frivolous litigation against Airbnb and Respondents for

years. . . . Pointing out this pattern and asking AAA to put an end to it does not constitute harassment."). The arbitrator denied witnessing any threatening conduct by the attorney and also denied that Mogan informed her of his disability. (*Id.*, at 33-35) ("I was not, and am not, aware that Mr. Mogan suffered any disability at that time. I also state that no 'egregious' conduct or harassment occurred during that conference."). While the Court must accept all well-plead allegations as true, "a court may dismiss a claim as factually frivolous" when its supporting allegations are "clearly baseless," such as when they are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *see also Weinschenk v. CIA*, 818 F. App'x 557, 558 (7th Cir. 2020); *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016).

Unlike the docketing issues and conduct identified above, Mogan's remaining allegations are more aptly directed to the AAA's conduct. Mogan alleges that he sent a disability complaint to the AAA requesting ADA accommodations and an investigation into the alleged improper conduct. (Dkt. 1-1, ¶ 34). He also claims that in this correspondence he informed the AAA of his disability. (*Id.*, ¶ 35). According to Mogan, the AAA did not respond or take action. (*Id.*, ¶¶ 35-46). Just like Mogan's other theories, however, these allegations fail. The ongoing problem with Mogan's allegations is the failure to identify conduct that falls *outside* the AAA's administrative duties in servicing arbitration proceedings. The way the AAA handles complaints from arbitration proceedings is an administrative task. Even the AAA's *lack* of action would still fall within this sphere because the AAA is responsible for determining how to run its services. While Mogan may not be happy with their decisions, that does not put the AAA's conduct out of bounds to lose protection under arbitral immunity. *Int's Med. Group*, 312 F.3d at 843-44.

For these reasons too, Mogan's claim that the AAA rejected his request for a hearing is misplaced. First, the record shows that this was the arbitrator's order, not the AAA's decision.

9

(Dkt. 8-1, Ex. 4). Critically, Mogan contractually agreed, and knowingly decided, to litigate before an arbitrator that told Mogan that she does not hold in-person hearings. (*Id.* at 32, n. 1) (Final Award by Arbitrator Benz: "The arbitrator advised the parties before she accepted the case that she did not conduct in-person evidentiary hearings."). Mogan may regret his decision to proceed with this arbitrator, but her decision on how to handle the arbitration proceeding is immune.

In his opposition to the AAA's motion to dismiss, Mogan raises several arguments why arbitral immunity should not apply; these arguments do not align with Mogan's allegations described above and, in several instances, directly contradict them. (Dkt. 15 at 10-12). Mogan primarily asserts that no immunity should apply because the arbitrator did not "render an arbitration award." (*Id.*) It is not clear what Mogan is referring to. Mogan alleged that the arbitrator "issued an award." (Dkt. 1-1, ¶ 45 ("On December 21, 2022, after the arbitrator issued an award . . .")). Mogan in fact challenged the arbitrator's award on appeal. (*See, e.g.*, Dkt. 8-1, Exs. 3, 5-6). As explained above, this argument is not persuasive because Mogan did not sue the arbitrator, he only sued the AAA, and he identified no basis why the Court should hold the AAA responsible for the arbitrator's decision-making. *Supra* at 5-6. At any rate, the Court has already explained that both the arbitrator and the AAA are immune for the actions they take when administering arbitration services. *Int's Med. Group*, 312 F.3d at 843-44.

In an attempt to hook in an exception to arbitral immunity, Mogan relies on California common law, contending that it "has recognized an exception to arbitral immunity" and that "immunity does not apply to the arbitrator's breach of contract by failing to make any decision at all." (Dkt. 15 at 10). Aside from the fact that the California common law does not apply here, there are no allegations that the arbitrator failed to make a decision; rather, as just explained, Mogan alleged that the arbitrator did in fact "issue[] an award." (Dkt. 1-1, ¶ 45).

Mogan also contends that the arbitrator acted outside of her jurisdiction by claiming that that "an arbitrator loses jurisdiction if a timely award is not forthcoming." (Dkt. 15 at 10-12). It is again unclear what Mogan is referring to as he alleged that the arbitrator issued an award (Dkt. 1-1, ¶ 45), he challenged that award (Dkt. 8-1, Exs. 3, 5-6), and has alleged no facts showing "a timely award" that is "not forthcoming." (Dkt. 15 at 10-12).

Next, Mogan states that the "AAA's contention that this court should extend immunity to the AAA based on their arbitrator who never renders an award . . . and another arbitrator who fails to conduct any hearings or address the issues before the arbitrator . . . fails to appreciate the nature of the arbitrator-party relationship and misperceives the policy underlying arbitral immunity." (*Id.* at 11). This position fails for the reasons stated above; it is also unclear what Mogan is referring to about "another arbitrator who fails to conduct any hearings or address the issues before the arbitrator," as the allegations Mogan refers to do not support—but contradict—this statement. (*Compare id. with* Dkt. 1-1, ¶¶ 28-37).

Finally, Mogan alleges that the AAA was legally required yet failed to respond as Title III and Section 504 require; but Mogan does not plausibly allege a disability and fails to connect the AAA to any discrimination. *Supra* at 1-3. Title III and Section 504 require a plaintiff to plausible allege a qualifying disability and discrimination based on that disability. *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018). Mogan alleges that he "has an episodic neurological disability which is a disability recognized by the American with Disabilities Act of 1990, as amended." (Dkt. 1-1, ¶ 7). At least one other Court dismissed identical allegations about Mogan's "disability" calling them empty "legal conclusions." *Mogan v. State Bar of California*, 2024 WL 4406943, at *6 (C.D. Cal. May 7, 2024), *aff'd*, 2025 WL 1672874 (9th Cir. June 13, 2025) ("First, it is not clear . . . what Plaintiff's disability is because he merely states that he 'has

an episodic neurological disability which is a disability recognized by the American with Disabilities Act of 1990, as amended.'"). Mogan presents this Court with the exact same allegation. (Dkt. 1-1, ¶ 7). For the same reasons, Mogan's allegation warrants dismissal. *Mogan*, 2024 WL 4406943, at *6 (dismissing Mogan's count under Title II of the ADA). Even assuming Mogan's allegation of a disability is sufficient, Mogan fails to allege "proof of causation." *A.H. by Holzmueller*, 881 F.3d at 593 ("both statutes prohibit discrimination against individuals 'by reason of' the disability, or 'on the basis of' the disability. This language requires [plaintiff] to prove 'that, "but for" his disability, he would have been able to access the services or benefits desired.'") (quoting *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006)). Mogan's complaint wholly fails to allege facts showing discriminatory conduct—much less that the AAA discriminated against him "on the basis of" his alleged disability. *Id*. As explained above, it in fact shows the opposite. *See Supra* at 7-8.

At bottom, the AAA acted "within the scope of the arbitral process" and so "arbitral immunity attaches to all acts." *Galuska*, 210 F.3d at 374 (citing *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382-83 (8th Cir. 1996) ("The courts also agree that to give effect to these underlying policies, arbitral immunity extends beyond arbitrators themselves to organizations that sponsor arbitrations.")); *Int'l Med. Grp.*, 312 F.3d at 844 (holding that the AAA was "immune from a suit based on wrongful exercise of jurisdiction"). There is widespread acceptance among the circuits that dismissal is proper under these circumstances. *New England Cleaning*, 199 F.3d at 545 (holding that a "sponsoring organization's immunity extends to the administrative tasks it performs" that are "integrally related to the arbitration"); *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral

capacity."); *Cahn v. Int'l Ladies Garment Union*, 311 F.2d 113, 114-15 (3d Cir. 1962); *Hawkins*, 149 F.3d 330, 332 (5th Cir. 1998) (sponsoring organizations are immune from civil liability arising from actions taken in the course of conducting arbitration proceedings); *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) ("Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusionary."); *Honn v. Nat'l Ass'n of Sec. Dealers, Inc.*, 182 F.3d 1014, 1017 (8th Cir. 1999) ("Arbitral immunity protects all acts within the scope of the arbitral process" and "extends to organizations . . . that sponsor arbitrations.") (cleaned up); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582-83 (9th Cir. 1987) (same). Like the Seventh Circuit, "[t]hese courts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158-59 (10th Cir. 2007).

## II.     Leave to Amend

Mogan seeks leave to amend his complaint. (Dkt. 15 at 15). To be sure the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, however, the Court retains broad discretion to deny leave to amend when there is "undue delay, bad faith or dilatory motive," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009).

Mogan's claim against the AAA is barred by arbitral immunity. (*Supra* at 1-13). Mogan presented no basis why immunity should not apply. (Dkt. 15 at 10-12). Even if, for example, Mogan added the parties he fixates on, that would not help. Adding the arbitrator fails as immunity still sticks. *Int'l Med. Grp.*, 312 F.3d at 844. Mogan alleged no facts how opposing counsel in the

arbitration proceedings violated Title III or Section 504. (Dkt. 1-1, ¶¶ 7-46). Mogan's claim also fails for more than just arbitral immunity. (Dkt. 9 at 7-15). Consider statute of limitations. (*Id.* at 7-9). "Illinois' two-year statute of limitations for personal injury suits applies to suits under the ADA and Rehabilitation Act." *Porch v. Univ. of Ill. at Chi. Sch. of Med.*, 2024 WL 2287194, at *3 (7th Cir. May 21, 2024) (citing *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550-51 (7th Cir. 1996) *and Rutledge v. Ill. Dep't of Hum. Servs.*, 785 F.3d 258, 260 (7th Cir. 2015)). Even a generous read of the conduct giving rise to Mogan's claims shows that he had knowledge of the alleged "discriminatory act" more than two years before he sued. (Dkt. 1-1, ¶ 45; Dkt. 8-1 at 44 (showing knowledge on or about January 30, 2023)). He confirmed his knowledge, and his plan to sue the AAA, on August 2, 2023 in a court filing—again more than two years before filing. (*Compare* Dkt. 8-1 at 70-71 *with* Dkt. 1-1 (complaint filed Sept. 4, 2025)).

Mogan's lawsuit bears all the hallmarks of bad faith. He advances frivolous legal and factual claims, ignores binding precedent, and repeats conduct for which he has already been ***repeatedly*** sanctioned. *McCluskey v. Henry*, 56 Cal. App. 5th 1197, 1206 (2020) (affirming an "award of sanctions . . . based on Mogan's conduct"); *McCluskey v. Hendricks*, 2023 WL 4195292, at *23 (Cal. Ct. App. June 27, 2023) ("[T]he trial court acted well within its discretion in imposing monetary sanctions against Mogan. It found that the discovery motion he filed on McCluskey's behalf wholly lacked merit and was unsupported by legal authority."); *Mogan v. Sacks, Ricketts & Case, LLP*, 2023 WL 2983577, at *2 (9th Cir. Apr. 18, 2023) ("The district court did not abuse its discretion in granting the Airbnb defendants' Rule 11 sanctions motion."); *Mogan v. Sacks, Ricketts & Case LLP*, 2022 WL 119212, at *3 (N.D. Cal. Jan. 12, 2022) ("Mogan attempted to relitigate numerous prior cases, simply refusing to accept prior rulings in Defendants' favor. After being sanctioned in state court and admonished for his false and unprofessional accusations, the

Court finds Mogan's complaint offers no reasonable basis for which an action could proceed, and his sole purpose is to harass and retaliate against Defendants. These litigation tactics warrant sanctions under Rule 11."); *Mogan v. Airbnb*, 2024 WL 3738480, at *1 (9th Cir. Aug. 9, 2024) (affirming district court's denial of Mogan's request for leave to amend his complaint noting that "Mogan sought to add a frivolous civil conspiracy claim"); *see also Mogan v. Petrou*, 2021 WL 5359400, at *3-4 (N.D. Cal. Nov. 17, 2021) (dismissing claims); *Mogan v. Hendricks*, 2024 WL 4501071, at *1 (9th Cir. Oct. 16, 2024) (affirming dismissal and detailing bad faith litigation: "Acting first on behalf of McCluskey and then himself, Mogan filed sixteen unsuccessful lawsuits arising from the dispute against various parties in state and federal court. This is Mogan's third appeal from adverse judgments in federal lawsuits arising from the same underlying dispute.").

Mogan's vexatious conduct has also been noted by the Seventh Circuit. *Mogan v. Portfolio Media, Inc.*, 143 F.4th 790, 792 (7th Cir. 2025) (affirming dismissal and detailing Mogan's vexatious conduct explaining that, after Mogan's unsuccessful lawsuit against Airbnb, "the state court ordered Mogan to pay sanctions for filing a frivolous motion. Mogan then sued Airbnb on his own behalf, in federal court, for abuse of process and unfair business practices that he alleged Airbnb committed in the *McCluskey* case. The federal court dismissed the case and imposed additional sanctions against Mogan for filing a frivolous lawsuit. When he refused to pay the state court sanctions, the California State Bar filed disciplinary charges against him.").

So, if Mogan can satisfy Rule 11 with an amended filing, he is granted leave to amend his complaint and has three weeks from the date of this order to file. The Court warns Mogan, however, that he will face sanctions if he files another frivolous or vexatious pleading. In light of Mogan's history of sanctions arising from frivolous, vexatious, and retaliatory filings—conduct that has persisted for nearly half a decade—and the apparent absence of any meaningful deterrent

effect, the Court cautions that any future filings of a similar nature may warrant the imposition of sanctions commensurate with the seriousness, duration, and persistence of that conduct. Indeed, Mogan surely knows what it means to file a vexatious lawsuit, as he has been repeatedly sanctioned for doing just that. *Supra* at 14-15; (Dkt. 9 at 1) (collecting cases on this issue).

## <u>CONCLUSION</u>

The Court grants Defendant's Motion to Dismiss Complaint [8] but not with prejudice. Plaintiff is permitted leave to amend, subject to the Court's admonishment.

_____
Virginia M. Kendall
United States District Judge

Date: January 27, 2026

16